01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
07                                    AT SEATTLE

08  GLADYS DAMPIER,                        )    CASE NO. C06-1188-RSM
                                           )
09            Plaintiff,                    )
                                           )
10       v.                                 )    REPORT AND RECOMMENDATION
                                           )    RE: SOCIAL SECURITY
11  MICHAEL J. ASTRUE,                      )    DISABILITY APPEAL
    Commissioner of Social Security,        )
12                                          )
              Defendant.                    )
13  _____ )

14           Plaintiff Gladys Dampier proceeds through counsel in her appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16  plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing before an

17  Administrative Law Judge (ALJ).

18           Having considered the ALJ's decision, the administrative record (AR), and all memoranda

19  of record, it is recommended that this matter be REMANDED for an award of benefits.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01

## FACTS AND PROCEDURAL HISTORY

02      Plaintiff was born on XXXX, 1956.[1] She completed the eighth grade of school, attending

03 special education classes.  Plaintiff previously worked as a nurse's aid and hotel housekeeper.

04      Following an application filed in 1993, plaintiff received SSI benefits based on drug

05 addiction and/or alcoholism. (*See* AR 14.)  Those payments ceased at some point and plaintiff filed

06 another application for SSI benefits in 2000, alleging disability beginning in June of that year.  (*Id.*)

07 That application was denied initially and on reconsideration.  Following a hearing, ALJ Edward

08 P. Nichols issued an unfavorable decision in 2002.  (AR 25-32.)

09      Plaintiff filed a third application for SSI benefits in November 2002, alleging disability

10 beginning January 1, 1999.  (AR 58-61.)  She based this application on her major depressive

11 disorder; migraines; chronic sinusitis; intermittent explosive disorder; borderline intellectual

12 functioning; illiteracy; polysubstance dependence in full sustained remission; hepatitis C; cirrhosis

13 of the liver; arthritis; high blood pressure; and stomach, back, and heart problems.  (AR 58.)  This

14 application was also denied initially and on reconsideration, and plaintiff timely requested a

15 hearing.

16      ALJ Verrell Dethloff held a hearing on October 7, 2005, taking testimony from plaintiff

17 and her case manager, Eileen Laiche.  (AR 431-65.)  He issued a decision unfavorable to plaintiff

18 on January 19, 2006.  (AR 14-21.)  Plaintiff timely appealed.  The Appeals Council denied

19 plaintiff's request for review on June 22, 2006, making the ALJ's decision the final decision of the

20

21

22

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01   Commissioner.  (AR 6-9.)  Plaintiff appealed this final decision of the Commissioner to this Court.

02   **JURISDICTION**

03        The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

04   **DISCUSSION**

05        The Commissioner follows a five-step sequential evaluation process for determining

06   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

07   be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

08   engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

09   determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

10   depressive disorder, cervical disc disease, borderline intelligence, hepatitis C, and status post

11   herniorrhaphy severe.  Step three asks whether a claimant's impairments meet or equal a listed

12   impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria for any

13   listed impairment.  If a claimant's impairments do not meet or equal a listing, the Commissioner

14   must assess residual functional capacity (RFC) and determine at step four whether the claimant

15   has demonstrated an inability to perform past relevant work.  The ALJ assessed plaintiff's RFC

16   and found her able to perform her past relevant work as a maid-housekeeper.  If a claimant

17   demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner

18   to demonstrate at step five that the claimant retains the capacity to make an adjustment to work

19   that exists in significant levels in the national economy.  Finding plaintiff not disabled at step four,

20   the ALJ did not proceed to step five.

21        This Court's review of the ALJ's decision is limited to whether the decision is in

22   accordance with the law and the findings supported by substantial evidence in the record as a

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

02  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

03  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

04  (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

05  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

06  2002).

07          Plaintiff argues that the ALJ erred in failing to find her disabled at step three, in ignoring

08  the evidence of her pain, and in failing to provide a complete transcript of the record. She requests

09  remand for an award of benefits or, alternatively, for further administrative proceedings.

10  Defendant concedes error, but argues that this matter should be remanded for further

11  administrative proceedings.

12          The Court has discretion to remand for further proceedings or to award benefits. *See*

13  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits

14  where "the record has been fully developed and further administrative proceedings would serve

15  no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

16          Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
        reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
17      must be resolved before a determination of disability can be made; and (3) it is clear
        from the record that the ALJ would be required to find the claimant disabled if he
18      considered the claimant's evidence.

19  *Id.* at 1076-77. For the reasons described below, the undersigned concludes that this matter

20  should be remanded for an award of benefits.

21  / / /

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01

<u>Step Three</u>

02       At step three, the ALJ must consider whether the claimant's impairments meet or equal

03 one of the impairments in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. Part

04 404, Subpart P. Plaintiff bears the burden of proving the existence of impairments meeting or

05 equaling a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

06       Plaintiff argues that the ALJ erred in failing to find her borderline intelligence/mental

07 retardation disabling pursuant to listing 12.05C. *See* 20 C.F.R. Part 404, Subpart P, App. 1, §

08 12.05C. Listing 12.05 describes mental retardation as "refer[ring] to significantly subaverage

09 general intellectual functioning with deficits in adaptive functioning initially manifested during the

10 developmental period; i.e., the evidence demonstrates or supports onset of the impairment before

11 age 22." *Id.* To satisfy part C of this listing, a claimant must have "[a] valid verbal, performance,

12 or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional

13 and significant work-related limitation of function[.]" *Id. Accord Markle v. Barnhart*, 324 F.3d

14 182, 187 (3d Cir. 2003) ("To meet the requirements of § 12.05C a claimant must i) have a valid

15 verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental

16 impairment imposing additional and significant work-related limitations of function, and iii) show

17 that the mental retardation was initially manifested during the developmental period (before age

18 22).")

19       ALJ Dethloff did not specifically address listing 12.05C. Instead, he concluded:

20 "Although the claimant has depression and borderline intellect, these impairments cause only

21 moderate difficulties in her maintaining social functioning and does not establish the presence of

22 the "C" criteria of the Listings." (AR 16.) However, ALJ Nichols did specifically address listing

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 | 12.05C and ALJ Dethloff fully incorporated into his decision the 2002 decision of ALJ Nichols.

02 | (*See* AR 15, 20.)

03 |     In discussing listing 12.05C, ALJ Nichols found as follows:

04 | A psychological assessment conducted by James D. Czysz, Psy.D. on February 6,
2002 included WAIS-III testing which produced IQ scores in the mid-60's.

05 | Accordingly, given the claimant's history of borderline intellectual functioning,
consideration was given to section 12.05C.  Yet, there are several evidentiary

06 | circumstances which mitigate against listing level severity in this regard.  When tested
by Dr. Winters in December 1997, the claimant achieved a valid WAIS-R verbal IQ

07 | score of 72, a performance IQ of 82, and a full-scale IQ of [stet] in the mid-70's.  This
is consistent with her self-reported and demonstrated functional abilities, and will be

08 | given more weight that [stet] the conducted by Dr. Czysz.  Although there is no
confirmation that the testing of Dr. Czysz was influenced by intentional poor effort,

09 | the scores produced are simply incompatible with the claimant's history of higher
functioning.  Moreover, the claimant was able to work with this limitation for years

10 | as both a motel maid and nurse's aide.  I note that, in order to meet the first
requirement of Section 12.05C, an individual must have significantly subaverage

11 | general intellectual functioning with deficits in adaptive behavior initially manifested
during the development period prior to age 22.  Given her demonstrated functional

12 | ability, the claimant does not meet this standard.

13 | (AR 26-27 (internal citations to record omitted.)) He later described plaintiff's "reported and

14 | demonstrated functional ability[]" as including, for example, her ability "to utilize public

15 | transportation; take her daughter on trips to the zoo; visit with her mother and prepare her own

16 | meals[,]" and "to do her own cleaning and grocery shopping, as well as maintain her own

17 | finances." (AR 29 (internal citations to record omitted.)) (*See also* AR 19 (ALJ Dethloff also

18 | described plaintiff's activities and abilities: "For instance, the claimant perform [stet] household

19 | chores; self-groom; prepare meals; attend church and narcotics anonymous meetings; take public

20 | transportation; socialize appropriately with the manager of her apartment complex; listen to the

21 | radio; and watch television."; "Although the claimant alleges that she cannot read or write, she

22 | demonstrated that she could perform basic arithmetic to the extent that she could pay rent, manage

01 her money, and purchase food.  Additionally, the claimant was able to follow a three-step

02 command upon examination and request help in completing necessary paperwork for enrollment

03 in drug and alcohol treatment."))

04        Plaintiff raises several arguments in relation to the first prong of listing 12.05C.  First,

05 while acknowledging that IQ scores inconsistent with a claimant's activities and demonstrated

06 abilities may be rejected, plaintiff asserts that, in this case, the ALJ erred in finding her 2002 IQ

07 scores incompatible with her history of functioning.  For example, in a third circuit case, the court

08 found a claimant's activities, including his "ability to pay his own bills, add and subtract, use an

09 ATM machine and to take care of all his own personal needs; [his] ability to identify and

10 administer his medication; his previous jobs; his obtaining a GED; and the positive evaluations of

11 [his] psychologist[,]" not inconsistent with qualifying mental retardation and not providing a valid

12 a basis for rejecting an IQ score of 70.  *Markle*, 324 F.3d at 186-87.  *See also Brown v. Secretary*

13 *of Health & Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) (finding facts including that "Mr.

14 Brown is able to use public transit; he has a driver's license; he visits friends; he is able to make

15 change at a grocery store; he can do his own laundry and clean his room; he completed the sixth

16 grade; he has a limited level of reading comprehension . . . ; and as a truck driver, Mr. Brown

17 recorded mileage, the hours he worked, and the places he drove[,]" not inconsistent with a valid

18 IQ score of 68 and concluding that substantial evidence did not support the rejection of that

19 score).  Plaintiff also rejects the ALJ's reliance on her past ability to work, noting she had reported

20 income in only eight of the past thirty-one years, with annual income of over $1,000.00 in only

21 three of those years.  (AR 71.)

22        Second, plaintiff maintains that the ALJ erred in failing to adopt the lower score of two

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  separate IQ tests.  She concedes that, while social security regulations provide for use of the

02  lowest IQ score of several produced in a single test, 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(D),

03  they "do not specify . . . which score the ALJ should disregard when there are differing scores

04  from two apparently valid IQ tests[,]"   *Muncy v. Apfel*, 247 F.3d 728, 733 (8th Cir. 2001).

05  However, plaintiff points to case law providing support for the adoption of the lower score of two

06  separate tests.  *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987) ("The ALJ found that

07  Fanning's IQ scores obtained during psychological testing by two clinical psychologists ranged

08  from a high of 76 to a low of 69, thereby satisfying the first prong of section 12.05(C).") (internal

09  footnote omitted); *Ray v. Chater*, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (inferring, based on the

10  regulation relating to multiple IQ scores on a single test, "that when multiple I.Q. scores are

11  available the Regulations prefer the lowest score; finding, with IQ scores of 67 and 72, plaintiff

12  met the first prong of listing 12.05D, which also requires a full scale IQ of 60 through 70).  *See*

13  *also Muncy*, 247 F. 3d at 734 (remanding where ALJ found higher IQ score a result of medical

14  improvement, but cited no other evidence supporting a dramatic improvement in intellectual or

15  adaptive functioning; directing ALJ on remand to enter specific findings detailing why first, lower

16  IQ score should not be adopted as the controlling score).  Plaintiff requests that this Court adopt

17  the logical inference that, where the lowest recorded score in a single examination is controlling,

18  the lowest recorded score as between two separate tests should also control.  Alternatively,

19  plaintiff requests that the Court remand for further development of this issue.

20      Third, plaintiff notes that ALJ Nichols failed to mention the results of an April 2001

21  examination in which Dr. Czysz rendered an estimated IQ of 64.  (AR 157.)  She maintains that

22  the results of this examination are indicative of her IQ or at least strongly corroborative of the

01 2002 results.  Plaintiff asserts that this error at least necessitates remand for further analysis as to

02 the validity of the two IQ scores in the mid-to-low sixties.

03       Plaintiff next asserts her satisfaction of the preliminary criteria for listing 12.05.  She avers

04 that her IQ score of 62 establishes her "significantly subaverage general intellectual functioning[,]"

05 while her eight plus years in special education establishes her "deficits in adaptive functioning

06 initially manifested during the developmental period; i.e., . . . before age 22."  20 C.F.R. Part 404,

07 Subpart P, App. 1, § 12.05(C).  Plaintiff also proffers support for the rebuttable presumption that

08 IQ remains fairly stable throughout life absent evidence of injury or change in intellectual

09 functioning.  *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001) (finding ALJ erred

10 in failing to presume from evidence related to condition after age twenty-two that claimant

11 manifested a mental disability prior to age twenty-two; directing ALJ on remand to presume

12 mental impairment before age twenty-two and allowing Commissioner opportunity to present

13 evidence that claimant's daily activities rebutted presumption); *Muncy*, 247 F.3d at 734 ("Mental

14 retardation is not normally a condition that improves as an affected person ages. . . .  Rather, a

15 person's IQ is presumed to remain stable over time in the absence of any evidence of a change in

16 a claimant's intellectual functioning."); *Luckey v. United States Dep't of Health & Human Servs.*,

17 890 F.2d 666, 668 (4th Cir. 1989) (noting prior recognition of the court that the absence of an IQ

18 test during a claimant's developmental years does not preclude a finding of mental retardation

19 prior to age twenty-two and that "in the absence of any evidence of a change in a claimant's

20 intelligence functioning, it must be assumed that the claimant's IQ had remained relatively

21 constant.") (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985)).

22       Finally, plaintiff argues that she also meets the second prong of listing 12.05C.  Pursuant

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01 to Ninth Circuit law, "an impairment imposes a significant work-related limitation of function

02 when its effect on a claimant's ability to perform basic work activities is more than slight or

03 minimal." *Fanning*, 827 F.2d at 633 (adopting this standard as established by other circuit courts)

04 (cited cases omitted).  A step two severity finding is not necessary to satisfy this standard. *Id*. at

05 n.3 (citing *Edwards by Edwards v. Heckle*, 755 F.2d 1513, 1515 (11th Cir. 1985) ("significant"

06 work-related limitation of function involves something more than "minimal" but less than

07 "severe")).  Plaintiff notes that, in this case, both ALJs found numerous severe impairments and

08 deemed her capable of performing light work. (*See* AR 16, 19 (finding plaintiff's depressive

09 disorder, cervical disc disease, borderline intelligence, hepatitis C, and status post herniorrhaphy

10 severe "given their affect on her ability to engage in work activities[,]" and assessing moderate

11 difficulties in maintaining social functioning; limiting plaintiff to light work, including "simple

12 repetitive tasks that do not require written instructions and [with] minimal contact with

13 coworkers."); AR 26-27, 30 (finding plaintiff's chronic neck and back pain, borderline intelligence,

14 depression, and hepatitis C severe and assessing, *inter alia*, moderate difficulties in maintaining

15 concentration, persistence, and pace; limiting plaining to light work, "diminished by non-exertional

16 limitations which make it impossible for her to concentrate on and attend to complex work

17 tasks[]" and finding her limited to "simple repetitive work shown by demonstration and not

18 requiring written instructions . . . [with] minimal contact with coworkers[.]")) Plaintiff asserts that,

19 accordingly, she has established a more than slight or minimal effect on significant work-related

20 limitation of function.

21    The Commissioner points to Social Security policy as supporting its request for further

22 administrative proceedings.  The applicable policy states in relevant part:

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01              If a file contains the results of several versions of the same test, such factor as
currency of the evaluation, claimant's age at time of evaluation, adequacy of claimant
02 and evaluator motivation, and completeness of the administration and report must also
be weighed in the decision as to which of several IQ's from different revisions of the
03 same measure will be determinative. . . . Adequate resolution of the issues posed by
specific cases may require professional consultation with a clinical psychologist or
04 psychiatrist trained in intelligence test administration and interpretation.  At the
hearing level, the testimony of a medical or psychological advisor or vocational expert
05 may be required.

06 Social Security Administration Program Operations Manual System (POMS) DI 24515.055.  The

07 Commissioner describes the Ninth Circuit's decision in *Fanning* as suggesting the adoption of the

08 lower of several valid IQ scores, but asserts that remand is nevertheless the appropriate remedy

09 in such circumstances.  *See* 827 F.2d at 633-34 (remanding where ALJ did not render any findings

10 as to whether any of alleged impairments had a more than slight or minimal effect on ability to

11 perform work activities).  Although it is not entirely clear, the Commissioner appears to argue that

12 the 2001 IQ score from Dr. Czysz did not stem from a valid IQ test as required by listing 12.05C.

13 (*See* AR 157 (Dr. Czysz described the 2001 results as stemming from an "Abbreviated" test.))

14 He asserts the need for a medical expert to assist the ALJ in evaluating the 1997 and 2002 test

15 results.

16         The Commissioner also concedes error with respect to the prefatory requirements of listing

17 12.05, noting plaintiff's eighth grade special education and inability to read and write beyond a

18 first or second grade level.  (*See* AR 137, 157, 174.)  Additionally, the Commissioner asserts that

19 the ALJ erred in failing to assess whether plaintiff's restriction to less than a full range of light

20 work satisfied the second prong of listing 12.05C, asserting that the Ninth Circuit has held that

21 the second prong may be satisfied where a claimant is limited to light or sedentary work.  *See*

22 *Fanning*, 827 F.2d at 633 (citing the decision in *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  1985), which held second prong of 12.5C was satisfied where claimant was limited to light or

02  sedentary work).

03      Given the above, the Commissioner essentially concedes that the record contains sufficient

04  evidence to show that plaintiff meets both the preliminary requirements of listing 12.05 (based on

05  her educational history and limited reading and writing ability) and the second prong of part C of

06  that listing (based on the limitation to light work).  The Court agrees that the record supports such

07  a conclusion.  The only question, therefore, is whether the lower, 2002 IQ score should control

08  and demonstrate plaintiff's satisfaction of the first prong of listing 12.05C.

09      The POMS provision relied on by the Commissioner "does not have the force of law, but

10  . . . is persuasive authority." *Warre v. Commissioner of the Soc. Sec. Admin.*, 439 F.3d 1001, 1005

11  (9th Cir. 2006).  In this case, the Court is not convinced the Commissioner should be given the

12  opportunity for further consideration of listing 12.05C.  Disregarding the POMS provision, case

13  law supports the adoption of the lower of two separate IQ test scores.  *See*, *e.g.*, *Fanning*, 827

14  F.2d at 633; *Ray*, 934 F. Supp. at 350.  Moreover, the Court agrees with plaintiff both that the

15  activities and abilities relied on by the ALJ in rejecting the lower IQ score are not inconsistent with

16  a finding of mental retardation, and that the ALJ's reliance on her work history is suspect.  With

17  respect to the latter, it should be noted that plaintiff's highest earnings by far were $4414.26 in

18  1990 and $3160.04 in 1991.  (AR 71.)  Also, even if the 2001 test is not valid in and of itself, it

19  does corroborate the results from Dr. Czysz's 2002 test.  For these reasons, the Court concludes

20  that it is clear from the record that the ALJ would be required to find plaintiff disabled pursuant

21  to listing 12.05C and that, therefore, she is entitled to an award of benefits.

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01          Credibility and Associated Arguments

02          Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

03   reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See*

04   *also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an

05   ALJ must render a credibility determination with sufficiently specific findings, supported by

06   substantial evidence. "General findings are insufficient; rather, the ALJ must identify what

07   testimony is not credible and what evidence undermines the claimant's complaints." *Lester v.*

08   *Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "We require the ALJ to build an accurate and logical

09   bridge from the evidence to her conclusions so that we may afford the claimant meaningful review

10   of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In

11   weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

12   inconsistencies either in his testimony or between his testimony and his conduct, his daily activities,

13   his work record, and testimony from physicians and third parties concerning the nature, severity,

14   and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789,

15   792 (9th Cir. 1997).

16          In this case, ALJ Dethloff assessed plaintiff's credibility as follows:

17          In determining the claimant's residual functional capacity, I also considered her
             subjective allegations and found them not credible given the objective medical record
18          of evidence.

19          Although the claimant alleges she cannot work due to her impairments, the record
             shows that her alleged inability to work stems entirely from her drug addiction and
20          alcoholism. On October 15, 2002, the claimant reported, "her use of drugs and
             alcohol prevented her from employment success, due to hangovers from alcohol and
21          cocaine, which resulted in an inability to attend work and/or reduced job performance
             and productivity." The claimant also reported that she has used her disability checks
22          to purchase cocaine in the past.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01
02
03

Although the claimant reported being clean and sober since May 2002, she has a significant relapse history.  The claimant has reported throughout the record that the longest that she has been sober in the past 25 years has been for one and one-half years.  While sober, the claimant was able to manage her funds and take care of her needs.  As to the issue of current sobriety, this is doubtful, absent corroboration over time.  Compare, <u>Kellar v. Rowen</u>, 848 F.2d 121, 124 (9[th] Cir. 1988).

04
05
06
07

Despite her alleged impairments, the record shows that the claimant has the ability to engage in daily activities.  For instance, the claimant perform [stet] household chores; self-groom; prepare meals; attend church and narcotics anonymous meetings; take public transportation; socialize appropriately with the manager of her apartment complex; listen to the radio; and watch television.  The fact that she engages in these daily activities indicates that she has the capacity to perform work activities despite her allegations that she cannot work.

08
09
10
11

Although the claimant alleges that she cannot read or write, she demonstrated that she could perform basic arithmetic to the extent that she could pay rent, manage her money, and purchase food.  Additionally, the claimant was able to follow a three-step command upon examination and request help in completing necessary paperwork for enrollment in drug and alcohol treatment.  I find that the claimant is not credible because her subjective allegations are not supported by the objective signs and clinical findings in the record.

12

13   (AR 19 (internal citations to record omitted.)) (*See also* AR 29, 31 (ALJ Nichols found plaintiff

14   not entirely credible "in light of the reports of the treating and examining practitioners, the findings

15   made on examination, and the claimant's own description of her activities and life style."))

16      Plaintiff argues that the ALJ failed to properly consider her complaints of pain.  She points

17   to Social Security Ruling (SSR) 96-7p, as requiring the ALJ to, first, "consider whether there is

18   an underlying medically determinable physical or mental impairment . . . that could reasonably be

19   expected to produce the individual's pain or other symptoms[,]" and, second, to "evaluate the

20   intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to

21   which the symptoms limit the individual's ability to do basic work activities."  Plaintiff further

22   notes that, under Ninth Circuit law, "once the claimant produces objective medical evidence of an

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  underlying impairment, an adjudicator may not reject a claimant's subjective complaints based

02  solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."

03  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  Plaintiff avers that ALJ Dethloff rejects

04  or ignores evidence of her pain, including opinions from physicians Drs. W.P. Fleet and Brian

05  Miller, the testimony of her case manager, Eileen Laiche, as well as her own testimony of her pain.

06  (*See* AR 278-79  (Dr. Fleet found plaintiff unable to lift at least two pounds, to stand and/or walk,

07  and to work due to "very severe spinal cord encroachment with nerve damage"), AR 412-13 (Dr.

08  Miller noted plaintiff's "multiple pain complaints in her upper extremities are more consistent with

09  a more proximal cause, such as, her spine."), AR 441-48 (plaintiff's testimony regarding her back

10  and neck pain and tendonitis); AR 463 (Laiche testified: "But I can see that she's in pain.  She has

11  progressively had a more stiff skeleton movement, and . . . when she sifts [stet] in her chair and

12  she's wincing, various non-verbal ways of letting me know - - or I can see that she's in pain.";

13  "[I]t's a very stiff posture, and it's hard for her to turn her neck because the back hurts so

14  much."))  Plaintiff maintains that the ALJ failed to consider whether her pain could reasonably

15  result from her conditions, failed to assess the limiting effects of her pain, failed to make specific

16  findings supporting his conclusions, and erred in rejecting her pain complaints based solely on a

17  lack of corroborating medical evidence.  She asserts that, at a minimum, her claim must be

18  remanded for further development on the issue of her pain.

19      The Commissioner concedes without elaboration that some of the reasons given for the

20  ALJ's assessment are supported by the record, while others are not.  The Commissioner agrees

21  that the case should be remanded for further consideration of this issue, but asserts no basis for

22  crediting plaintiff's testimony as true.  *See, e.g., Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  2003) (courts retain flexibility in applying the "'crediting as true' theory"; remanding for further

02  determinations where there were insufficient findings as to whether plaintiff's testimony should

03  be credited as true).

04        The Commissioner also acknowledges specific errors, asserting that the ALJ erred in failing

05  to evaluate the opinion of Dr. Miller and in his consideration of Laiche's testimony.  The ALJ

06  rejected Laiche's testimony upon concluding that she was not qualified as an expert and that her

07  testimony was "merely cumulative because there is no significant demonstrated factual change in

08  the claimant's mental functioning" since the unfavorable 2002 decision.  (AR 19.)  The

09  Commissioner notes, however, that Laiche merely offered lay observations of plaintiff's physical

10  movements and apparent pain, as well as her reading, writing, and emotional difficulties.  (*See* AR

11  461-63.)  He asserts the need for remand to allow the ALJ to consider the opinions of Dr. Miller

12  and the testimony of Laiche.

13        The Commissioner does not concede error with respect to Dr. Fleet.  The ALJ accorded

14  no weight to Dr. Fleet's opinion that plaintiff was unable to lift at least two pounds, to stand

15  and/or walk, and work due to "'very severe spinal cord encroachment with nerve damage'[,] . .

16  . because his characterization that the claimant has severe spinal stenosis is grossly exaggerated

17  given the MRI results showing only moderate stenosis and mild cord atrophy without associated

18  abnormal enhancement or cord signal; cervical myelogram, which showed mild mid cervical

19  spondylosis and loss of normal cervical lordosis; and neurological examination, which showed no

20  significant pain with palpation of the spine."  (AR 18 (internal citations to record omitted.)) The

21  Commissioner asserts that the ALJ provided sufficient reasons for rejecting this physician's

22  opinions.  *See Lester*, 81 F.3d at 830-31 (where not contradicted by another physician, a treating

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  or examining physician's opinion may be rejected only for "'clear and convincing'" reasons; where

02  contradicted, a treating or examining physician's opinion may not be rejected without "'specific

03  and legitimate reasons' supported by substantial evidence in the record for so doing.") (quoting

04  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) and *Murray v. Heckler*, 722 F.2d 499,

05  502 (9th Cir. 1983) respectively).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

06  2005) ("[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of

07  a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.")

08         The ALJ did not reject plaintiff's complaints of pain based solely on a lack of corroborating

09  medical evidence.  Moreover, it should be noted that medical evidence is "still a relevant factor

10  in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*,

11  261 F.3d 853, 857 (9th Cir. 2001).  In addition, evidence regarding a plaintiff's daily activities may

12  be considered by the ALJ in finding that a plaintiff's subjective pain testimony is not credible.  *Id.*

13  If anything, in this case, the ALJ should have more directly discussed plaintiff's complaints of pain

14  in his credibility assessment.

15         As asserted by the Commissioner, the ALJ failed to address the evidence from Dr. Miller

16  and wrongly construed Laiche's testimony as proffering a medial opinion.  With respect to the

17  latter, lay witness testimony as to a claimant's symptoms or how an impairment affects ability to

18  work is competent evidence, *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), and an

19  ALJ can reject such testimony only upon giving reasons germane to each witness, *see Smolen*, 80

20  F.3d at 1288-89 (finding rejection of testimony of family members because, *inter alia*, they were

21  "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of

22  all the witnesses as a group and therefore [did] not qualify as a reason germane to each individual

01 who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  *Accord Lewis v.*

02 *Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[L]ay testimony as to a claimant's symptoms is

03 competent evidence that an ALJ must take into account, unless he or she expressly determines to

04 disregard such testimony and gives reasons germane to each witness for doing so.")

05     As for Dr. Fleet, the Court agrees with the Commissioner that the ALJ provided sufficient

06 reasons for rejecting the opinions of this physician.  Moreover, the Court further agrees that there

07 is not a sufficient basis for crediting plaintiff's testimony as true.  That is, the ALJ did provide

08 some legitimate reasons for finding plaintiff not credible, including the impact of her drug and

09 alcohol history on her past attempts to work, and the conflict between her alleged level of

10 impairment and her activities and demonstrated abilities.  (*See* AR 19.)

11     In sum, if the Court were to have found further administrative proceedings necessary in

12 this case at step three, the ALJ should have also been directed to reconsider plaintiff's credibility.

13 Specifically, the Court would have directed the ALJ to address plaintiff's complaints of pain in

14 accordance with SSR 96-7p, consider the evidence from Dr. Miller, and discuss Laiche's

15 testimony as given from the perspective of a lay witness.

16 <u>Past Relevant Work</u>

17     Past relevant work is work (1) performed within the past fifteen years, (2) constituting

18 substantial gainful activity (SGA), and (3) lasting long enough for the individual to have learned

19 how to perform the work. 20 C.F.R. §§ 416.960(b)(1), 416.965(a).  If an individual worked only

20 off-and-on for brief periods during the fifteen-year period, that work will generally not be

21 considered past relevant work.  20 C.F.R. § 416.965.  Also, average earnings of more than

22 $500.00 per month ordinarily show that work is SGA, while average monthly earnings below

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01 │ $300.00 generally show a claimant has not engaged in SGA.  20 C.F.R. § 416.974(b).  However,

02 │ earnings are a presumptive, not a conclusive sign of whether a job constitutes SGA.  *Lewis*, 236

03 │ F.3d at 515. The presumption shifts the step-four burden from the claimant to the Commissioner.

04 │ *Id.*  To meet that burden, the ALJ must point to substantial evidence, aside from earnings, that a

05 │ claimant has engaged in SGA.  *Id.* at 515-16 (noting relevant factors pursuant to the regulations,

06 │ including "the nature of the claimant's work, how well the claimant does the work, if the work is

07 │ done under special conditions, if the claimant is selfemployed, and the amount of time the claimant

08 │ spends at work.") (citing 20 C.F.R. §§ 404.1573, 416.973).

09 │        The Commissioner notes that plaintiff worked for approximately six to eight months in

10 │ 1991, earning a total of $3,160.04, reported no income for the years 1992 through 1997, and

11 │ earned a total of $1,652.37 in 1998.  (AR 69, 71.)  He asserts that, depending on whether plaintiff

12 │ worked six or eight months, it is unclear whether her 1991 earnings where just at or below the

13 │ $500.00 level creating a presumption of SGA.  The Commissioner states that the ALJ offered no

14 │ reasons for why plaintiff's past work qualified as SGA and did not employ the services of a

15 │ vocational expert to clarify this issue.  He avers that this matter should be remanded so that the

16 │ ALJ may consult with a vocational expert on whether plaintiff has past relevant work.  Plaintiff

17 │ does not address this issue in her reply.

18 │        If the Court were to have found further administrative proceedings necessary at step three,

19 │ the ALJ should have also been directed to consider whether plaintiff has past relevant work.

20 │ However, this issue does not argue against an award of benefits and requires no further analysis.

21 │ / / /

22 │ / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01                            Transcript of the Record

02        Plaintiff argues that the Commissioner failed in his duty to provide a complete transcript

03   of the record.  *See* 42 U.S.C. § 405(g) ("As part of the Commissioner's answer the Commissioner

04   of Social Security shall file a certified copy of the transcript of the record including the evidence

05   upon which the findings and decision complained of are based.")  She asserts that, while all of ALJ

06   Dethloff's citations to the record are readily identifiable, some of ALJ Nichol's citations were

07   either not identifiable or presumably not included in the record.  She provides some examples in

08   her brief.  (*See* Dkt. 11 at 30.)  Plaintiff argues that this issue put both her and the Court at a

09   disadvantage with respect to this case.  In response, the Commissioner asserts that this alleged

10   error may support further proceedings, but not a payment of benefits.

11        Again, had further proceedings been necessary, the Court would have directed the

12   Commissioner to ensure that the record is complete and, to the extent possible, ensure that all

13   citations to the record in both ALJ decisions are identifiable.  However, finding an award of

14   benefits appropriate, this issue need not be further considered.

15                                  **CONCLUSION**

16        For the reasons set forth above, this matter should be REMANDED for an award of

17   benefits.

18        DATED this 1st day of May, 2007.

19

20                                          _____
                                            Mary Alice Theiler
21                                          United States Magistrate Judge

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -20